**<u>EXHIBIT B</u>**

**Davis Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------- x
In re:                                   :   Chapter 11
                                         :
LINCOLN POWER, L.L.C., et al.,¹          :   Case No. 23-10382 (LSS)
                                         :
   Debtors.                              :   (Jointly Administered)
                                         :
------------------------------------------------------------- x
```

**DECLARATION OF GEORGE A. DAVIS AND**
**DISCLOSURE STATEMENT OF LATHAM & WATKINS LLP**

I, George A. Davis, declare as follows:

1.       I am a partner in the law firm of Latham & Watkins LLP ("**L&W**"), an international law firm with offices across the United States, Europe, and Asia.  I am admitted in, practicing in, and a member in good standing of the bar of the State of New York, and there are no disciplinary proceedings pending against me.  I am over the age of eighteen, am authorized to submit this Declaration, and am competent to testify on the matters contained herein.

2.       I submit this Declaration to provide disclosure in connection with the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Latham & Watkins LLP as Bankruptcy Co-Counsel Effective as of the Petition Date* (the "**Application**"),[2] by which the above-captioned debtors and debtors-in-possession (together, the "**Debtors**") seek authority to employ and retain L&W as bankruptcy co-counsel effective as of the Petition Date.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Lincoln Power, L.L.C. (6449), Cogentrix Lincoln Holdings, LLC (6060), Cogentrix Lincoln Holdings II, LLC (4004), Elgin Energy Center Holdings, LLC (N/A), Elgin Energy Center, LLC (4819), Valley Road Holdings, LLC (N/A), Valley Road Funding, LLC (1587), and Rocky Road Power, LLC (2701).  The Debtors' address is 13860 Ballantyne Corporate Place, Suite 300, Charlotte, North Carolina 28277.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other L&W professionals or paraprofessionals, or learned from my review of relevant documents.  To the extent any information disclosed herein requires amendment or modification as additional information becomes available to L&W, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

## L&W'S QUALIFICATIONS

4.      The Debtors seek to retain L&W because of L&W's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of L&W's knowledge of the Debtors' business and financial affairs.

5.      L&W and its partners have represented numerous debtors in their bankruptcy matters, including Accuride Corporation, AIG Financial Products Corp., Allen Systems Group, Inc., Alta Mesa Resources, Inc., AT&T Latin America, Bally Total Fitness Holding Corp., B456 Systems, Inc. (f/k/a A123 Systems, Inc.), Boston Generating, LLC, Centrus Energy Corp. (f/k/a USEC INC.), Chaparral Energy, Inc., Consolidated Freightways, Cricket Communications, Inc., Dayton Superior Corporation, DVI, Inc., DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), Eddie Bauer Holdings, Inc., Emerge Energy Services LP, Enduro Resource Partners LLC, Freedom Communications Holdings, Inc., Global Eagle Entertainment Inc., GNC Holdings, Inc., Graceway Pharmaceuticals, LLC, Green Field Energy Services, Inc., Hexion Holdings LLC, Hi-Crush Inc., Illinois Power Generating Company, Imerys Talc America, Inc., Libbey Glass Inc., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Lumileds Holding B.V., Mallinckrodt plc, MD Helicopters, Inc., Monitronics International, Inc., NEC Holdings Corp., Nine Point Energy Holdings, Inc., OnCure Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC,

Panda Temple Power, LLC, Rentech WP U.S. Inc., RHI Entertainment, Inc., Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Spansion Inc., Spectrum Brands Inc., Starry Group Holdings, Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy Services, Inc., Traffic Control and Safety Corporation, Tuscany International Holdings (U.S.A.) Ltd., Vital Pharmaceuticals, Inc., and Weatherford International plc.

6.      I am one of the principal L&W attorneys working on this engagement.  I have extensive experience in corporate restructurings and have represented debtors, asset purchasers, bank groups, secured lenders, unsecured creditors, and other parties in both in-court and out-of-court restructurings, and in related litigation.  Other professionals and paraprofessionals in L&W's insolvency practice and in other practice areas, many of whom also have extensive experience in corporate restructurings generally and debtor representations in chapter 11 cases specifically, will participate in the representation of the Debtors in these Chapter 11 Cases.

7.      L&W has acted as the Debtors' outside counsel since 2017 and has also acted as counsel to the Sponsor (as defined below).  During that time, L&W has represented the Debtors in connection with various financing, corporate and other matters.  Moreover, since early 2023, the Debtors and L&W have worked together closely in an effort to respond to the Debtors' financial circumstances, including by engaging in negotiations with the Debtors' major creditors and potential strategic partners concerning the Debtors' restructuring options and by assisting the Debtors in all aspects of preparing these Chapter 11 Cases.  At the same time in early 2023, L&W ceased representing the Sponsor in connection with this matter, and the Sponsor retained its own counsel in connection with this matter.  L&W possesses an in-depth knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the legal issues that might arise in the context of these Chapter 11 Cases.

8.      Accordingly, I believe that L&W is both well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases and that such representation will contribute greatly to the efficient administration of the estates, thereby minimizing expense to the estates and facilitating the progress of these Chapter 11 Cases.

## SERVICES TO BE PROVIDED

9.      Consistent with that certain engagement letter dated February 7, 2023 (the "**Engagement Letter**"), a copy of which is attached as Exhibit 1 hereto, L&W expects to provide, without limitation, the following legal services:

a.      advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advise and consult on the conduct of these Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      advise the Debtors and take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved;

d.      analyze proofs of claim filed against the Debtors and object to such claims as necessary;

e.      represent the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

f.      attend meetings and negotiate with representatives of creditors, interest holders, and other parties in interest;

g.      analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

h.      prepare pleadings in connection with these Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

i.      advise the Debtors in connection with any potential sale of assets;

j.      take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

k.      appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

l.      advise on corporate, litigation, environmental, finance, tax, employee benefits, and other legal matters; and

m.      perform all other necessary legal services for the Debtors in connection with these Chapter 11 Cases.

10.      I understand that, concurrently with the filing of the Application, the Debtors anticipate filing an application to retain Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**") as their bankruptcy co-counsel and conflicts counsel. Because L&W and Young Conaway will have distinct and well-defined roles, each counsel will not duplicate the services the other provides to the Debtors. L&W will coordinate with Young Conaway and any other counsel the Debtors retain in these Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

11.      The Debtors also have filed or intend to file applications to employ (a) FTI Consulting, Inc. to provide a chief restructuring officer and additional personnel; (b) Guggenheim Securities, LLC as investment banker; and (c) Omni Agent Solutions as claims and noticing agent and as administrative advisor in these Chapter 11 Cases. L&W intends to monitor carefully the efforts of all other professionals the Debtors retain in these Chapter 11 Cases and to coordinate with such professionals to delineate clearly their respective duties in order to prevent duplication of effort, whenever possible.

## PROFESSIONAL COMPENSATION

12.      L&W intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11

Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, and any procedures and orders of the Court.

13.    L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. L&W's current hourly rates for matters related to these Chapter 11 Cases range as follows:

| Billing Category | Rates |
|---|---|
| Partners | $1,360 to $2,230 |
| Counsel | $1,300 to $1,690 |
| Associates | $705 to $1,400 |
| Professional Staff | $210 to $1,050 |
| Paralegals | $300 to $660 |

14.    L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first L&W fee application following such adjustments).[3]  The current hourly rates for the attorneys with primary responsibility for providing services to the Debtors are as follows:

| Attorney | Hourly Rate |
|---|---|
| George Davis | $2,035 |
| Caroline Reckler | $1,850 |
| Andrew Sorkin | $1,655 |
| Brett Neve | $1,250 |
| Randall Weber-Levine | $1,140 |
| Thomas Fafara | $830 |
| Chandler Keller | $830 |
| Ata Nalbantoglu | $705 |

---

[3]    L&W's billing rates are usually revised annually, on or around January 1 of each year, as is customary with L&W's policies.  Accordingly, L&W's billing rates will increase on January 1, 2024.  As set forth in the Order, L&W will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with the Court.

15.     Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services.  It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.  These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings.  L&W professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices, and L&W will continue to charge for overtime secretarial charges that arise out of business necessity.  L&W will charge the Debtors $0.10 per page for standard duplication in accordance with the Local Rules.

16.     No promises have been received by L&W, or any partner, counsel, or associate thereof, as to payment or compensation in connection with these Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Except for sharing arrangements among L&W, its affiliated law practice entities, and their respective members, in accordance with sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016(b), L&W has not entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these Chapter 11 Cases for (a) the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in

connection therewith, (b) payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) payment of compensation in connection with these Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code.

### U.S. TRUSTEE GUIDELINES

17.     L&W will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and with any fee applications filed by L&W in these Chapter 11 Cases.

18.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines:

a.     **Question**:  Did L&W agree to any variations from, or alternatives to, L&W's standard billing arrangements for this engagement?

**Answer**:  No.  The rate structure provided by L&W is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations and (b) the rates of other comparably skilled professionals.

b.     **Question**:  Do any of the L&W professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**:  No.

c.     **Question**:   If L&W has represented the Debtors in the 12 months prepetition, disclose L&W's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If L&W's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**:  L&W's current hourly rates for services rendered on behalf of the Debtors are set forth above.  Up until the Petition Date, the following rates were used:  $1,565 to $2,565 for partners; $1,500 to $1,985 for counsel; $870 to $1,670 for associates; $220 to $1,320 for professional staff; and $310 to $795 for paralegals.  In addition, from time to time, L&W provided courtesy discounts on these rates.  During the prior calendar year, L&W

used the following rates for services rendered on behalf of the Debtors: $1,455 to $2,385 for partners; $1,395 to $2,385 for counsel; $810 to $1,555 for associates; $205 to $1,200 for professional staff; and $290 to $740 for paralegals.

d.    **Question**:  Have the Debtors approved L&W's budget and staffing plan and, if so, for what budget period?

**Answer**:  L&W has provided the Debtors with a prospective budget and staffing plan setting forth the types of timekeepers, numbers thereof, and applicable hourly rates it expects during these Chapter 11 Cases, which has been approved by the Debtors.  The budget and staffing plan cover the period from the Petition Date to June 30, 2023.

## COMPENSATION RECEIVED BY L&W FROM THE DEBTORS

19.    As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtors.

20.    As set forth in the chart below, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $3,618,889.40 for services performed and expenses incurred, and to be performed and incurred, including in preparation for the commencement of these Chapter 11 Cases.  Most payments were in the form of retainers for the advance payment of subsequent invoices (the "**Fee Advance**") as set forth in the chart below. As of the Petition Date, the balance of the Fee Advance was $229,765.75.  L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date and will seek the approval of this Court prior to applying any portion of the remaining Fee Advance to postpetition fees and expenses.

| Transaction | Invoice Date | Payment Date | Amount Invoiced | Date Range of Services | Amount Paid | Fee Advance Balance |
|---|---|---|---|---|---|---|
| Invoice | 12/12/22 | | $19,078.00 | 10/18/22 - 11/29/22 | | $0.00 |
| Payment | | 1/11/23 | | | $19,078.00 | $0.00 |
| Advance Payment | | 2/7/23 | | | $649,811.40 | $649,811.40 |

| Advance Payment | | 2/21/23 | | | $500,000.00 | $1,149,811.40 |
|---|---|---|---|---|---|---|
| Invoice | 2/21/23 | | $34,837.50 | 12/5/22 - 12/23/22 | Fee Advance Applied | $1,114,973.90 |
| Invoice | 2/21/23 | | $90,858.20 | 12/26/22 - 1/5/23 | Fee Advance Applied | $1,024,115.70 |
| Invoice | 2/21/23 | | $374,115.70 | 1/6/23 - 1/31/23 | Fee Advance Applied | $650,000.00 |
| Invoice | 2/24/23 | | $650,000.00 | 12/30/22 - 2/12/23 | Fee Advance Applied | $0.00 |
| Advance Payment | | 3/1/23 | | | $950,000.00 | $950,000.00 |
| Invoice | 3/6/23 | | $706,087.10 | 2/12/23 - 2/28/23 | Fee Advance Applied | $243,912.90 |
| Advance Payment | | 3/6/23 | | | $350,000.00 | $593,912.90 |
| Advance Payment | | 3/23/23 | | | $800,000.00 | $1,393,912.90 |
| Invoice | 3/24/23 | | $917,600.04 | 2/16/23 - 3/23/23 | Fee Advance Applied | $476,312.86 |
| Advance Payment | | 3/27/23 | | | $200,000.00 | $676,312.86 |
| Advance Payment | | 3/30/23 | | | $150,000.00 | $826,312.86 |
| Invoice | 3/30/23 | | $329,769.78 | 3/5/23 - 3/29/23 | Fee Advance Applied | $496,543.08 |
| Invoice | 4/20/23 | | $266,777.33 | 3/1/23 - 3/30/23 | Fee Advance Applied | $229,765.75 |

21.     L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout these Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.

## DISINTERESTEDNESS

22.     In preparing this Declaration, I used a set of procedures developed by L&W to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "**Firm Disclosure Procedures**").  Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain L&W's connection to such parties:

a.     The following comprehensive list (the "**Retention Checklist**") of the types of entities that may have contacts with the Debtors was developed through

30316049.4

discussions with the L&W attorneys who have provided services to the Debtors and in consultation with the advisors to and senior management of the Debtors:

(i)      Debtors
(ii)     Significant Shareholders and Related Entities
(iii)    Current Lenders and Related Parties
(iv)     Directors and Officers
(v)      Former Directors and Officers
(vi)     Current Affiliates
(vii)    Professionals
(viii)   Ordinary Course Professionals
(ix)     Current and Prior Significant Banking Relationships
(x)      Taxing Authorities
(xi)     Litigation Parties
(xii)    Insurance Providers and Brokers
(xiii)   Utilities
(xiv)    Customers, Licensors, and Other Key Contractual Counterparties
(xv)     Significant Vendors
(xvi)    Top 30 Unsecured Creditors
(xvii)   District of Delaware Bankruptcy Judges and Key Staff Members
(xviii)  Office of the United States Trustee
(xix)    Other Parties

b.     L&W obtained information responsive to the Retention Checklist through several inquiries of the Debtors' senior management and advisors and review of documents provided by the Debtors to L&W. L&W then used that information, together with other information identified by L&W, to compile a list of the names of entities that may be parties in interest in these Chapter 11 Cases (the "**Potential Parties in Interest**"), as set forth on Appendix 1 hereto.[4] The information listed on Appendix 1 may have changed without my knowledge and may change during the pendency of these Chapter 11 Cases. L&W will update this Declaration, as described below, when L&W becomes aware of new material information.

c.     L&W maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "**Client Database**"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the L&W personnel who are or were responsible for current or former matters for such clients. The Client Database also includes the name of

---

[4]   The entities included on the list of Potential Parties in Interest (and the categories contained therein) were provided by the Debtors to L&W for purposes of a conflict check only and should not be relied upon by any party as a list of creditors or for any other purpose.

former clients of L&W attorneys while such attorneys were at a prior firm. L&W policy is that no new matter may be accepted or opened within L&W without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party.  Accordingly, the database is updated for every new matter undertaken by L&W. The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d.      L&W compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the three years prior to the Petition Date.  Any matches to names in the Client Database generated by the comparison were compiled, together with the names of the respective L&W personnel responsible for the identified client matters (the "**Client Match List**").  The Client Match List is attached as Appendix 2 to this Declaration.[5]

e.      Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of L&W personnel, L&W verified that it does not represent and has not represented any entity on the Client Match List in connection with the Debtors or the Chapter 11 Cases, except as otherwise set forth herein.

f.      In addition, a general inquiry was sent by email to all L&W attorneys to determine whether any such individuals or any members of their households (i) own or owned any debt or equity securities of the Debtors; (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (vi) are related to or have any connections to anyone working in the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**").

23.     L&W compiled responses to the foregoing inquiries for the purpose of preparing this Declaration.  Responses to the inquiry described in subparagraph (f) above indicate that, as of

---

[5]     As referenced in Appendix 2, the term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter.  The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed.  L&W does not disclose connections if time was recorded more than three years before the Petition Date.

the Petition Date and except as described below, no L&W attorneys or members of their household: (i) own or owned any debt or equity securities of the Debtors;[6] (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the District of Delaware; or (vi) are related to or have any connections to anyone working in the Office of the U.S. Trustee.

24.     Of the entities listed on Appendix 2, only two represented more than 1% of L&W's total client billings for the twelve-month period ending February 28, 2023 (on a consolidated basis)[7]: Carlyle Group Inc. and JP Morgan Chase Bank.[8]  None of the entities listed on Appendix 2 represented more than 3% of L&W's total client billings for such twelve-month period.

25.     L&W will not represent the Debtors in an adversary proceeding commenced against any client of L&W unless L&W has an applicable waiver on file or first receives a waiver from such entity allowing L&W to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an adversary proceeding against that entity, the Debtors will employ Young Conaway or retain separate conflicts counsel to represent them in that particular matter.  In addition, L&W will not represent any client on any matter adverse to the Debtors or their estates while retained as the Debtors' counsel in these Chapter 11 Cases.

26.     L&W will periodically review its files during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any relevant

---

[6]   Certain L&W attorneys or members of the households of L&W attorneys may unknowingly hold interests in the Debtors in blind, discretionary accounts, exchange-traded funds, or mutual funds.

[7]   According to L&W's records as of March 23, 2023.

[8]   L&W will provide the exact percentage of total client billings that these entities represent to the U.S. Trustee on a confidential basis upon request.

facts or relationships are discovered or arise, L&W will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).  In that regard, L&W intends to disclose clients in the capacity that they first appear in a conflicts search.  For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, a bank), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a bondholder), then L&W does not intend to disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

27.     Except as set forth herein, and based upon the information available to me, neither I, nor L&W, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.  Based on the foregoing and to the best of my knowledge, I believe that: (a) L&W is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and (b) L&W has no connection to the Debtors, their creditors, or their related parties except as may be disclosed in this Declaration (as supplemented from time-to-time).  The proposed engagement of L&W is not prohibited by or improper under Bankruptcy Rule 5002(a).

## SPECIFIC DISCLOSURES

28.     As specifically set forth below and in Appendix 2, L&W represents or has represented certain of the Debtors' creditors, equity holders, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors and these Chapter 11 Cases.  None of the representations described herein is adverse to the interests of the Debtors or their estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' co-counsel merely because it represents or has represented the Debtors' creditors,

equity security holders, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors or these Chapter 11 Cases. I do not believe that L&W's current and prior representations described herein preclude L&W from being a disinterested party under the Bankruptcy Code.

### Relationships with Current Lenders and Related Parties

29. L&W currently represents or formerly represented certain of the Debtors' current lenders or their affiliates. Specifically, L&W currently represents or in the past has represented ABN AMRO Capital, China Merchants Bank Co., CIT Bank, N.A., GE Capital EFS Financing, Inc., Industrial and Commercial Bank of China Limited, Investec Bank plc, JP Morgan Chase Bank, Migdal Sal (ForEx Credit UK), National Australia Bank Limited, the Royal Bank of Scotland Group Pension Fund, STWD 2021-SIF1, Ltd, SunTrust Bank, Wells Fargo Bank, N.A., and/or certain of their affiliates (collectively, the "**Lenders**") in a number of different matters unrelated to the Debtors and these Chapter 11 Cases. The Lenders comprise one or more of the following: (a) a prepetition lender to the Debtors; (b) an agent or issuing lender under the Debtors' prepetition credit facilities; and (c) an entity with whom the Debtors have a banking relationship. L&W has not represented and will not represent the Lenders in connection with any matter in these Chapter 11 Cases.

30. I do not believe that L&W's past or current representation of the Lenders in matters unrelated to the Debtors or these Chapter 11 Cases precludes L&W from being a disinterested party under the Bankruptcy Code. In the event that the Debtors and any of the Lenders become directly adverse to one another in an adversary proceeding in these Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Relationships with Non-Debtor Affiliates

31.     L&W currently represents and formerly represented certain of the Debtors' non-debtor affiliates.  Specifically, L&W currently represents Carlyle Group Inc., Carlyle Power CPP II Lincoln, L.L.C., Carlyle Power Partners II-C, L.P., and/or certain of their affiliates (collectively, the "**Sponsor**"), as well as Cogentrix Power, LLC and certain of its affiliates (collectively with the Sponsor, the "**Non-Debtor Affiliates**") in a number of different matters unrelated to the Debtors and the Chapter 11 Cases.

32.     In the past, L&W has represented the Non-Debtor Affiliates in connection with certain matters related to the Debtors, including in connection with the Sponsor's acquisition of the equity interests in the Debtors in 2017, and thereafter in connection with corporate, financing and other matters related to the Debtors and the ownership thereof.  When L&W was retained as the Debtors' bankruptcy co-counsel in early 2023, L&W ceased representing the Non-Debtor Affiliates in connection with these matters, and the Sponsor retained its own counsel in connection with the Chapter 11 Cases.  L&W has not represented and will not represent the Non-Debtor Affiliates in connection with any matter related to these Chapter 11 Cases.

33.     I do not believe that L&W's past or current representation of the Non-Debtor Affiliates in the foregoing matters precludes L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the Non-Debtor Affiliates become directly adverse to one another in an adversary proceeding in these Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Relationships with Significant Unsecured Creditors

34.     L&W currently represents or formerly represented certain of the Debtors' significant prepetition creditors or their affiliates.  Specifically, L&W currently represents or in the past has represented Amazon Capital Services, Inc., Chromalox, Inc., Deloitte & Touche LLP,

Ingersoll Rand Co., Linde Gas & Equipment, Inc., Siemens Energy, Inc., W.W. Grainger, Inc., and/or certain of their affiliates in a number of different matters unrelated to the Debtors or these Chapter 11 Cases.

35.    I do not believe that L&W's past or current representations described in this paragraph preclude L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any such creditor become directly adverse to one another in an adversary proceeding in these Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Other Connections to Potential Parties in Interest

36.    Certain insurance companies pay the legal bills of L&W clients.  Some of these insurance companies may be involved in these Chapter 11 Cases.  None of these insurance companies, however, is an L&W client as a result of the fact that it pays legal fees on behalf of a client of L&W.

37.    Certain of the parties in interest in these Chapter 11 Cases may be, or previously may have been, members of ad hoc or official creditors' committees represented by L&W in matters unrelated to these Chapter 11 Cases.  In such instances, L&W represented only the committee or group, and did not represent the creditors in their individual capacities, and no attorney client relationship exists or existed between L&W and such parties in interest unless specifically noted.  L&W does not and will not represent any of these parties in connection with these Chapter 11 Cases.

38.    L&W may have represented, and may currently represent, entities that hold or may in the future hold certain of the Debtors' debt in beneficial accounts on behalf of unidentified parties.  Because distressed debt is actively traded in commercial markets, L&W may be unaware

of the actual holder of such debt at any given moment.  L&W also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors.  Moreover, from time to time, L&W is engaged by various entities that buy and/or sell distressed debt to analyze the capital structure of a distressed company based on a review of publicly available information.  L&W does not undertake such reviews after it has been engaged to represent any such company, including the Debtors, and does not view any public debt review as an adverse representation to the Debtors.  Similarly, as a large, international firm, L&W may represent creditors and/or investors of or parties interested in investing in one or more parties in interest in these cases.  L&W does not believe these relationships represent interests adverse to the estate.

39.    Certain of the Debtors, their non-debtor affiliates, or other entities associated with the Debtors may be creditors of entities that L&W currently represents or has represented in bankruptcy proceedings or post-effective date claims processes.  Similarly, certain parties in interest in these Chapter 11 Cases may be current or former L&W restructuring clients.  L&W will not represent the Debtors, the Debtors' non-debtor affiliates, or other entities associated with the Debtors in any matter related to other L&W clients' bankruptcy proceedings.  Nor will L&W represent any of its other restructuring clients against the Debtors in any of its other clients' restructuring matters.  L&W's other chapter 11 representations are unrelated to these Chapter 11 Cases and the Debtors.  I do not believe these representations preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

### Relationships with Other Professionals

40.    From time to time, L&W has referred work to other professionals to be retained in these Chapter 11 Cases, and certain such professionals have referred work to L&W.  Also, as part of its practice, L&W appears in cases, proceedings, and transactions involving many different

attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in these cases. L&W has not represented, and will not represent, any such parties in relation to the Debtors or their Chapter 11 Cases. L&W does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

41.    L&W currently represents or formerly represented certain of the Debtors' other professionals in a number of different matters unrelated to the Debtors and these Chapter 11 Cases. I do not believe that L&W's past or current representation of these other professionals in matters unrelated to the Debtors or these Chapter 11 Cases precludes L&W from being a disinterested party under the Bankruptcy Code. In the event that the Debtors and any of the applicable professionals become directly adverse to one another in an adversary proceeding in these Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

### L&W Attorney Clerkships

42.    Madeleine Parish, an L&W associate, was a law clerk for the Honorable Christopher S. Sontchi of the United States Bankruptcy Court for the District of Delaware from September 2016 to September 2017. The Honorable Christopher S. Sontchi retired from the Court effective June 30, 2022, prior to the commencement of these Chapter 11 Cases. Ms. Parish began working at L&W in September 2019. I do not believe that Ms. Parish's work for the Court precludes L&W from being a disinterested party under the Bankruptcy Code.

### L&W Attorney Investments

43.    From time to time, L&W partners, of counsel, associates, and employees, or members of the households of the foregoing, personally invest in mutual funds, exchange-traded funds, retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds,

and other types of investment funds (the "**Investment Funds**"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases, often without L&W's knowledge.  Each such person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Funds are generally operated as a blind pool, meaning that when such persons make an investment in an Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

44.    From time to time one or more L&W partners voluntarily choose to form an entity (a "**Passive-Intermediary Entity**") to invest in one or more Investment Funds or, in certain instances, directly in private companies.  Such Passive-Intermediary Entity is comprised only of persons who were L&W partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former L&W partners), and participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of L&W's partners choose to participate.  L&W itself does not invest in the Passive-Intermediary Entity.  The Passive-Intermediary Entity generally owns substantially less than one percent of any underlying Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales.  The Passive-Intermediary Entities commonly receive periodic statements and communications from the underlying

Investment Funds.  The L&W partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

45.    Certain of the Passive-Intermediary Entities may make a direct investment into a private company.  It is my understanding that no Passive-Intermediary Entity has made any direct investment into the Debtors or otherwise purchased any debt or equity security of the Debtors.  In addition, as discussed above, the Firm Disclosure Procedures involve sending a general inquiry to all L&W attorneys to determine whether any such individuals or any members of their households own or owned any debt or equity securities of the Debtors or hold or held any claim against or interest adverse to the Debtors, among other things.  Thus far, no response to this general inquiry has disclosed the ownership of any debt or equity securities of the Debtors or the holding of any claim against or interest adverse to the Debtors.

46.    From time to time, L&W partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company, which may be (or become) one of the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases.  L&W has a long-standing policy prohibiting attorneys and employees from using material non-public information that may come to their attention in the course of their work, so that all L&W attorneys and employees are barred from trading in securities with respect to which they possess material non-public information.

## OTHER INVESTIGATION AND DISCLOSURE MATTERS

47.    L&W's investigation and research of the Potential Parties in Interest has thus far failed to eliminate the possibility that Potential Parties in Interest other than those listed on Appendix 2 hereto may be current or former clients of L&W because: (a) the names of the Potential

Parties in Interest are similar to, but not identical to, current or former L&W clients; or (b) the names of the Potential Parties in Interest are common names that appeared on our conflict search results, but do not appear to be the same individuals or entities that are parties in interest herein.

48.     Although L&W has undertaken, and continues to undertake, extensive efforts to identify connections with the Debtors and other Potential Parties in Interest, it is possible that connections with some Potential Parties in Interest have not yet been identified.  Should L&W, through its continuing efforts, learn of any new connections of the nature discussed herein, L&W will so advise the Court in a timely manner as soon as reasonably practicable.

49.     L&W will not, while employed by the Debtors during the pendency of these Chapter 11 Cases, represent an interest adverse to the Debtors or their estates.

50.     Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude L&W's representation of the Debtors in these Chapter 11 Cases.

51.     The foregoing constitutes the statement of L&W pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

*[Signature page follows]*

30316049.4

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 25, 2023

_/s/ George A. Davis_
George A. Davis

**<u>EXHIBIT 1</u>**

**Engagement Letter**

**George A. Davis**
Direct Dial: +1.212.906.1305
George.Davis@lw.com

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 7, 2023

Cogentrix Lincoln Holdings, LLC
13860 Ballantyne Corporate Place, Suite 300
Charlotte, North Carolina 28277
Attention: George Knapp, Vice President

Re:  Engagement Letter

Dear George:

## I.      LEGAL SERVICES.

You have asked us to represent Cogentrix Lincoln Holdings, LLC and its subsidiaries listed on Schedule A attached hereto (collectively, "Lincoln Power" or "you") in connection with potential restructuring and related matters.  This letter will confirm our discussions regarding your engagement of Latham & Watkins LLP ("Latham").  The scope of our work may evolve in accordance with discussions or correspondence with you from time to time.  If additional services are requested by you and agreed to by us, this letter will apply to such services, unless superseded by another written agreement.  In each case, before we can agree to provide additional services, we will need to perform a conflicts check and otherwise confirm our ability to provide these services.  Our representation is limited to the specific services that you request and that we have agreed to undertake.

## II.      IDENTITY OF THE CLIENT.

Our clients in this matter will be solely Lincoln Power and any other entities in Lincoln Power's corporate family identified to us in writing in conjunction with these matters that we are requested in writing to represent and agree in writing to represent (collectively, the "Client").  We do not represent and will not be deemed to have an attorney-client relationship with any of the Client's current or future parents, subsidiaries, shareholders, members, partners, employees, directors, officers, venturers or other affiliates solely on account of our representation of the Client in this matter or in any matters we agree in the future to accept.  We are distinguishing between the entities and persons who are and are not our clients so that it is clearly understood to whom our various duties as attorneys are owed.  We shall have those duties to the Client as defined herein, but not to other entities or persons even if they are affiliated entities of the Client.  If we subsequently agree to represent any affiliated entities of the Client, we will need to perform a

LATHAM&WATKINS LLP

conflicts check and either execute separate engagement letters with them or confirm the details of the representation in writing, which may include confirmation by electronic mail. If, however, we take on work for such affiliated entities without such a separate engagement letter or confirmation, the terms in this engagement letter (including, but not limited to terms governing conflicts of interest and arbitration of disputes) will apply to that representation. For the avoidance of doubt, Latham will no longer be representing Cogentrix Energy Power Management, LLC, Lincoln Operating Services, LLC, Carlyle Power Partners II, L.P., Carlyle Power Partners II-A, L.P., Carlyle Power Partners II-B, L.P., Carlyle Power Partners II-C, L.P. and CPP II Co-Investment, L.P. and their respective affiliates (other than the Clients) (collectively the "Excluded Entities") in connection with any work related to Lincoln Power and we understand that the Excluded Entities have engaged separate counsel related thereto.

Because of the extraterritorial reach of Anti-Money Laundering laws in certain jurisdictions where Latham practices, it may become necessary for us to collect documentation verifying the identity of the Client if any timekeepers outside of the U.S. work on this matter or any additional matter we agree to undertake. We will seek to collect any required documentation from publicly-available sources; however, we may need to request documentation directly from you if the documentation is not publicly available.

## III.    ROLES OF ATTORNEY AND CLIENT.

Our responsibilities under this agreement are to provide legal counsel and assistance to you in accordance with this letter, and to provide statements to you that clearly state the basis for our fees and charges. We will not disclose any confidential information of yours to any other client, even where that information might have some bearing on their interests. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so. You also agree to keep us informed of developments related to this representation and to pay our statements in a timely manner. To allow us to conduct a conflicts check, you have identified to us certain of the persons and entities that are or may become involved in this matter, including such persons or entities that are affiliated with you. You agree to notify us if you become aware of any other persons or entities that are or may become involved in this matter.

During the course of this engagement, we may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only, and should not be construed as promises or guarantees.

Please also be aware that Latham has internal ethics and professional responsibility counsel, who advise Latham attorneys regarding their ethical, professional and legal duties. From time to time, the attorneys working on your matter may consult these lawyers. You acknowledge that any such consultation is protected by Latham's own attorney-client privilege, and not subject to discovery. You also agree that such communications are property of the firm and are not part of the Client File as defined in Section 4 of this letter.

IV.    **CLIENT FILES AND RETENTION.**

In the course of your representation, we shall maintain a file in which we may place correspondence, agreements, governmental filings, prospectuses, disclosures, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to your representation ("Client File"). The Client File shall be and remain your property. Upon completion of the representation, your original Client File for that representation shall be available to be taken by you. We will be entitled to make copies if we choose. You also agree at the conclusion of the representation (whether or not you take possession of the Client File) to take possession of any and all original contracts, wills, stock certificates, and other such important documents that may be in the Client File and we shall have no further responsibility with regard to such documents. If you do not take possession of the Client File at the conclusion of the representation, we will store such file for you for a period of seven years. If you do not take possession of the Client File during such seven-year storage period, you agree that we may dispose of it. In addition, in the event we are holding files of yours for a matter other than one in which we have represented or are representing you, you agree that we may dispose of such files seven years after we receive them, if you have not claimed them from us prior to that. You agree that our internal communications, preliminary drafts, notes, and mental impressions shall be and remain our property and shall not be considered part of your Client File. You agree that we may enact and implement reasonable retention policies for such materials and that we also have discretion to delete such materials.

V.    **CONFLICTS OF INTEREST**.

While we are representing you in this matter, we will have no other role in this matter for another party without your consent. As with any other client and any other matter, you will have our complete loyalty with respect to this matter.

We note that Latham is an international law firm with numerous attorneys and offices in many countries and that we practice in many diverse areas of law. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Furthermore, some of our clients may now or in the future operate in the same lines of business as you do. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients. We thus ask you in connection with this engagement to consent in advance to our acceptance of matters (including litigation matters) adverse to the Client (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you. By entering into this agreement, you consent in advance to such adverse representations. (Summaries of our current practice areas and the industries in which we represent clients can be found on our website at www.lw.com.). This consent also includes being adverse to you in any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding.

In addition, by entering into this letter you agree that if we represent you in a matter adverse to another person or entity, including but not limited to adversaries in the matter that is the subject of this engagement letter, we may in the future represent such other person or entity on matters not

LATHAM&WATKINS LLP

substantially related to our work for you. Thus, for example, without your further consent, we may represent and may continue to represent banks, investment banks, private equity funds, hedge funds and other financing sources on a regular basis in matters other than those in which we represent you.

You also agree that, in a matter where you are, or may be, competing with one or more other bidders in an M&A matter, to allow our firm, with separate teams (commonly referred to as "trees") that do not share information about the related matters (except as may be agreed by Latham and Lincoln Power in respect of any particular subject such as, for example, shared regulatory, tax, and antitrust diligence) to represent other competing bidders and financing sources for other bidders. We will not accept an engagement from another client in the situations described above unless we believe that our representation of that other client will not have an adverse effect on the exercise of our independent professional judgment on your behalf in the matters in which we represent you.

You should feel completely free to consult other counsel concerning these matters and we encourage you to do so. By signing this letter, you acknowledge that you have had an opportunity to consult with other counsel.

## VI.    RATES, FEES AND CHARGES.

Upon execution of this letter, Lincoln Power shall promptly deliver or wire to Latham an evergreen advance payment retainer in the sum of $150,000.00, or such greater or lesser amount as agreed from time to time between the Client and Latham. This evergreen advance payment retainer, and all replenishments thereof, will be held by Latham as an advance toward our fees and charges in connection with this letter, but will not be put into a trust, escrow or segregated account. To the extent that the amount of any of Latham's invoice statements is less than the agreed upon evergreen advance payment retainer amount, Lincoln Power will pay Latham, promptly upon its receipt of Latham's invoice statement, a further payment to bring the evergreen advance payment retainer amount to the agreed upon amount (*i.e.*, $150,000.00). To the extent that the amount of Latham's invoice statement is more than the agreed upon evergreen advance payment retainer amount, Lincoln Power will pay to Latham, promptly upon its receipt of Latham's invoice statement, the excess amount plus an evergreen advance payment retainer equal to the amount of $150,000.00. Any funds that you may deposit with us as an advance towards our fees and charges will be treated as property of the firm. Any unused portion of any advanced funds after our services are concluded will be returned to you.

Our fees are based primarily on the amount of time spent by our lawyers, paralegals and other professionals on your behalf. Each lawyer, paralegal and other professional assigned to this matter will have individual hourly billing rates, and the applicable rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rates will range from $705 per hour to $2,565 per hour, depending upon the seniority and expertise of the attorney involved. The billing rates for attorneys expected to provide the majority of services in this engagement will range from $705 per hour to $2,230 per hour. The rates for certain specialist attorneys may fall out of the range. For paralegal

LATHAM&WATKINS LLP

and other professional time, our rates will range from $220 to $1,440 per hour. The billing rates for paralegals and professionals expected to provide the majority of services in this engagement will range from $210 per hour to $1,050 per hour.

In addition to fees, you agree to pay for disbursements and other charges.  These will include such items as photocopying and scanning documents ($0.10 per page); at-cost expense for large-volume print jobs over 100 pages when formatted in Word or Adobe Acrobat applications; long-distance and roaming mobile phone charges; use of fee-based research databases (90% of the third-party vendor rate or 1.25 times our volume-discounted cost depending on vendor); couriers and air freight (1.10 times our volume-discounted cost); messengers (at third-party vendor rate); client-specific work by staff; staff overtime and meals (as defined by federal or local law); transportation (where dictated by safety reasons, and which may include a transaction fee); word processing; postage, at cost; supplies (for large volume only); and other reasonable costs and expenses.  For disbursements over $1,500, we may ask that billings be sent directly to you or that advances be provided.

In the event we are compelled to testify or respond to a subpoena or other legal process in relation to a matter we have handled for you, you agree that we are entitled to be reimbursed for our time in doing so at our then-current rate, and for our expenses reasonably incurred, even if our attorney-client relationship with you is terminated at that time.

When our personnel travel, we generally utilize business class for international flights. Through a third-party travel management company, in-house travel services are provided for our U.S. offices.  A ticketing fee of $30 will be charged for fares up to $300, and $75 will be charged for fares over $300.  There are no additional charges for changes to reservations or for reimbursement of unused tickets.  Our personnel bill for travel time, but if they work on another matter while traveling for you, you will not be billed for that time.

We intend to provide statements to you on at least a monthly basis.  They will show our time logged in tenth-of-an-hour increments and will separate fees from disbursements and other charges.  Payment of our statements is due promptly upon receipt.  Our rates are based on our receiving payment within thirty (30) days.  Should this matter involve an immediate or expected bankruptcy filing, however, we may provide invoice statements on a more frequent basis for immediate payment upon the receipt of our invoices.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times.  Following any such revision, our new rates and charges will be applied to your account, and we will provide you with written notice of any such revisions.

From time to time, you may request estimates of the fees and charges that we anticipate incurring on your behalf.  These estimates are subject to unforeseen circumstances and are by their nature inexact.  While we may provide estimates for your general planning purposes, such estimates are subordinate to our regular billing procedures, absent an express written agreement to the contrary.

L A T H A M & W A T K I N S LLP

If any dispute should arise between us and you as to fees, subject to certain conditions you may have the right to require that the dispute be arbitrated.

## VII.    DATA PROTECTION & COMMERCIAL COMMUNICATIONS BY EMAIL.

In order to provide legal services and maintain our business relationship, the firm may use personal information about you and other individuals at your organization. Details of how we use this information are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy. We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com.

We constantly attempt to improve our service, and monitor developments in the law and practice.  Periodically we may send information about this, including brochures and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organization with whom we have contact. You can opt out at any time.

## VIII.    ARBITRATION OF DISPUTES.

Any controversy or claim, whether in tort, contract or otherwise, arising out of or relating to the relationship between the Client, their respective subsidiaries or successors (the "Client Arbitration Parties") and Latham, its affiliated partnerships, attorneys or staff or any of their successors (the "Latham Arbitration Parties") or the services provided or the fees charged by the Latham Arbitration Parties pursuant to this engagement letter or otherwise to the Client Arbitration Parties shall be submitted to binding arbitration.  By agreeing to arbitrate, you are agreeing to waive your right to a jury trial.  The arbitration will be conducted in accordance with this letter, the Federal Arbitration Act and CPR Rules for Non-Administered Arbitration, as in effect on the date of this letter.  The arbitration shall be conducted before a panel of three neutral arbitrators. The arbitration shall be commenced and held in the city and state in which the Latham office is located whose attorneys spent the most amount of time on the matter in dispute.  Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, the applicability, interpretation, or enforceability of this agreement shall be resolved by all of the arbitrators.  To the extent state law is applicable, the arbitrators shall apply the substantive law of the state in which the Latham office is located whose attorneys spent the most amount of time on the matter in dispute.  Each party will be entitled to depose a maximum of six witnesses, plus all experts designated to be witnesses at the arbitration.  The depositions shall be limited to a maximum of six hours per deposition.  All aspects of the arbitration shall be treated as confidential and neither the parties nor the arbitrators may disclose the content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.  The result of the arbitration shall be binding on the parties and judgment on the arbitrators' award may be entered in any court having jurisdiction.  The arbitration panel shall be entitled to award any damages provided for under the state law that is controlling.

**LATHAM&WATKINS** LLP

## IX.    LIMITED LIABILITY PARTNERSHIP.

Latham is a limited liability partnership (LLP).  Similar to the corporate form of business organization, the LLP form generally limits the liability of the individual partners of the firm to the capital they have invested in the firm for claims arising from services performed by the firm. Our form of organization as an LLP will not diminish the ability to recover damages from the firm or from any individuals who directly caused the loss.

Because of legal requirements in those countries, work done out of our firm's offices in England, France, Hong Kong, Japan, Singapore, and Italy will be carried out through affiliated partnerships registered locally, and work done in Saudi Arabia will be carried out through a cooperating law practice registered locally, but the distinction will be largely transparent to you as a client.

## X.    ENTIRE AGREEMENT AND MISCELLANEOUS.

You and we understand that this letter constitutes the entire agreement between Latham and the Client pertaining to the engagement of Latham, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham.

All parties signing this letter represent and warrant that they are fully authorized to enter into this agreement, and in the case of signatories agreeing on behalf of organizations, to bind the organization or organizations to the terms in this letter.

Our relationship with you will be deemed concluded when we have completed our agreed-upon services, except that for the avoidance of doubt, your obligations for fees and charges shall survive.  In addition, and without limiting the preceding sentence, in the event we have performed no work on your behalf for six consecutive months, you agree that our attorney-client relationship with you will have been terminated.

LATHAM&WATKINS LLP

## XI.    APPROVAL AND RETURN OF LETTER.

If this letter meets with your approval, please sign and return the enclosed copy, together with the retainer described in paragraph 6 above.  We will begin our work promptly upon our receipt of that signed copy and the retainer.

This letter may be executed in any number of counterparts and by different parties on separate counterparts.  Each of such counterparts shall be deemed to be an original, and all of such counterparts, taken together, shall constitute but one and the same agreement.  Delivery of an executed counterpart of this letter by telecopier or electronic mail shall be equally effective as delivery of a manually executed counterpart.

We look forward to working with you.

Very truly yours,

*George A. Davis*

George A. Davis
of LATHAM & WATKINS LLP

**February 7, 2023**
**Page 9**

LATHAM&WATKINS LLP

### Approval of Engagement

Lincoln Power agrees to the terms of the enclosed letter, effective as of the date on which Latham & Watkins LLP first provided services to Lincoln Power.

By signing this letter, Lincoln Power acknowledges and agrees that Lincoln Power has been afforded the full opportunity to review it and to seek the advice of independent counsel, and either has in fact consulted with such independent counsel or has chosen not to do so.

If more than one party signs below, each of us agrees to be liable, jointly and severally, for all obligations under this engagement.

BY SIGNING THIS LETTER, LINCOLN POWER AGREES TO HAVE ANY ISSUE ARISING OUT OF OR RELATING TO THE SERVICES OF THE LATHAM ARBITRATION PARTIES (INCLUDING ANY CLAIM FOR PROFESSIONAL LIABILITY) DECIDED IN ARBITRATION AND LINCOLN POWER GIVES UP ITS RIGHT TO A JURY OR COURT TRIAL AND ACKNOWLEDGES THE ARBITRATION PROVISION IN SECTION 8 ABOVE.

Date:  February 7, 2023

Cogentrix Lincoln Holdings, LLC

By: _George Knapp_____

Name: George Knapp

Title: Vice President

Cogentrix Lincoln Holdings II, LLC

By: _George Knapp_____

Name: George Knapp

Title: Vice President

Elgin Energy Center Holdings, LLC

By: _George Knapp_____

Name: George Knapp

Title: Vice President

US-DOCS\138705154.10

LATHAM&WATKINS LLP

Elgin Energy Center, LLC

By: _____

    Name: George Knapp

    Title: Vice President


Lincoln Power, L.L.C.

By: _____

    Name: George Knapp

    Title: Vice President


Valley Road Holdings, LLC

By: _____

    Name: George Knapp

    Title: Vice President


Valley Road Funding, LLC

By: _____

    Name: George Knapp

    Title: Vice President


Rocky Road Power, LLC

By: _____

    Name: George Knapp

    Title: Vice President

LATHAM&WATKINS LLP

<u>Schedule A</u>

Cogentrix Lincoln Holdings II, LLC
Elgin Energy Center, LLC
Elgin Energy Center Holdings, LLC
Lincoln Power, L.L.C.
Rocky Road Power, LLC
Valley Road Funding, LLC
Valley Road Holdings, LLC

# **APPENDIX 1**

**Potential Parties in Interest List**

**Potential Parties in Interest[1]**

**1.    Debtors**

Cogentrix Lincoln Holdings, LLC            Lincoln Power, L.L.C.
Cogentrix Lincoln Holdings II, LLC         Rocky Road Power, LLC
Elgin Energy Center, LLC                   Valley Road Funding, LLC
Elgin Energy Center Holdings, LLC          Valley Road Holdings, LLC

**2.    Significant Shareholders[2] and Related Entities**

Carlyle Power CPP II Lincoln, L.L.C.       Carlyle Group Inc.
Carlyle Power Partners II-C, L.P.

**3.    Current Lenders and Related Parties**

ABN AMRO Capital, USA LLC                  Migdal Makefeet Pension and Provident Funds
China Merchants Bank Co., Ltd., New York      Ltd
   Branch                                  Migdal Sal (ForEx Credit UK)
CIT Bank, N.A.                             National Australia Bank Limited
FirstBank Puerto Rico (UK)                 RBS Pension Trustee Limited as trustee for the
FirstBank Puerto Rico d/b/a FirstBank Florida      Royal Bank of Scotland Group Pension Fund
GE Capital EFS Financing, Inc.                (Main Fund Section)
ICBC Standard Bank PLC (UK)                STWD 2021-SIF1, Ltd
Industrial and Commercial Bank of China    STWD 2021-SIF2 Ltd (UK)
   Limited, New York Branch                SunTrust Bank
Investec Bank PLC                          Truist Bank (UK)
Migdal Insurance Company Ltd

**4.    Directors & Officers**

Christopher Jordan                         John Ragan
Emily P. Thomason                          Kevin McCarthy
George Knapp                               Phyllis Green
Jason Solimini                            PIRINATE Consulting Group, LLC (Eugene
Jeff Ingraham                                Davis)
John Collins                              Stephanie Kueffner
John Gasbarro

---

[1]    The parties included on this list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that would otherwise fall under multiple categories is likely to be listed under only one category.

[2]    This category includes shareholders that (directly or indirectly) hold 5% or more of the Debtors' equity.

**5.    <u>Former Directors & Officers</u>**

| | |
|---|---|
| Robert Mancini | Michael L. Wennen |
| Jacob A. Pollack | C. Richard Neff |
| William L. Felts | Michelle M. Bendel |
| Robert Howard | W. Jason Allman |
| James W. Crawford, Jr. | Felix Khalatnikov |

**6.    <u>Current Affiliates</u>**

| | |
|---|---|
| Cogentrix Energy Power Management, LLC | Lincoln Operating Services, LLC |
| Cogentrix Field Services, LLC | CGX Operating Services, LLC |

**7.    <u>Professionals</u>**

| | |
|---|---|
| FTI Consulting, Inc. | Omni Agent Solutions |
| Guggenheim Partners | Richards, Layton & Finger, PA |
| Latham & Watkins LLP | RPA Advisors, LLC |
| Young Conaway Stargatt & Taylor LLP | Stroock & Stroock & Lavan |
| Kirkland & Ellis, LLP | Akin Gump Strauss Hauer & Feld, LLP |
| Willkie Farr & Gallagher LLP | |

**8.    <u>Ordinary Course Professionals</u>**

| | |
|---|---|
| FM Speer, LLC | Quarles & Brady LLP |
| Michael Best Strategies, LLC | GT Power Group LLC |
| Rock Creek Energy Group, LLP. | Trading Counsel Solutions |

**9.    <u>Current & Prior Significant Banking Relationships</u>**

| | |
|---|---|
| First Citizens Bank (CIT) | Wells Fargo Bank, N.A. |
| Investec USA Holdings Corp | JP Morgan Chase Bank |

**10.    <u>Taxing Authorities</u>**

| | |
|---|---|
| Cook County Treasurer's Office | Illinois Department of Revenue |
| Department of the Treasury Internal Revenue Service | Kane County Treasurer's Office |

**11.    <u>Litigation Parties</u>**

| | |
|---|---|
| PJM Interconnection, L.L.C. | PJM Settlement, Inc. |

### 12. <u>Insurance Providers and Brokers</u>

ACE Insurance Co
ACT/Helvetia
AEGIS US
Allianz
American International Group, Inc.
Aon PLC
Aon Risk Services South, Inc.
Argonaut Insurance Company
AXA XL
AXIS Insurance Company
Chubb Bermuda Insurance Ltd
Chubb Corp.

CNA Financial Corporation
Illinois Union Insurance Company (Chubb)
Liberty
Liberty Insurance Corporation
Liberty Mutual Fire Insurance Company
Munich Re America Corporation – The Princeton Excess & Surplus Lines Insurance Company (PESLIC)
Ohio Casualty Insurance Company
RLI Corp.
SCOR SE
Swiss Reinsurance Company Ltd

### 13. <u>Utilities</u>

AT&T, Inc.
AT&T Corporation
Getgoing Infrastructure Group LLC
Commonwealth Edison Company
Flood Bros Disposal Co
Heritage Crystal Clean LLC

Nicor Gas
City of Elgin
Ringcentral Inc.
Comcast Cable Communications Management LLC
Village of East Dundee

### 14. <u>Customers, Licensors, and Other Key Contractual Counterparties</u>

Macquarie Bank Limited

Macquarie Energy LLC

### 15. <u>Significant Vendors</u>[3]

Allegheny Energy Supply Company LLP
Alpine Power Systems Inc.
American Electric Power Service Corporation
Anr Pipeline Company
Depue Mechanical, Inc.
Evoqua Water Technologies, LLC
Horizon Pipeline Company LLC
Imperial Crane Services Inc.
Macquarie Energy LLC
Meade, Inc.
Mitsubishi Power Americas, Inc.
Natural Gas Pipeline
Nicor Gas
Novaspect, Inc.

Petrochoice LLC
Sequent Energy Management LLC
Sequent Energy Management LP
Service One Access Inc.
Sherman Mechanical
Siemens Energy, Inc.
The Pjm Power Providers Group (P3)
Thermohelp Inc.
TRS Serv LLC
Vim Technologies, Inc.
Voith US Inc
Shermco Industries

---

[3]  This category includes vendors representing the top 75% of the Debtors' spend over the past 24 months not otherwise captured in a different category.

**16.**   **Top 30 Unsecured Creditors**

Altorfer Industries Inc.
Amazon Capital Services, Inc.
ASAP Cleaning Service
BTI Communications Group Ltd
Chromalox, Inc.
Cintas Corporation
De Lage Landen Financial Services, Inc.
Deloitte & Touche LLP
Fusion Cloud Services LLC
Heritage Crystal Clean LLC
Hill Fire Protection LLC
Ingersoll Rand Co
Instamation Systems Inc.
Jani-King Of Illinois
Linde Gas & Equipment, Inc.
Mead Obrien Inc.

Mid Central Pest Control, Inc.
MKD Electric, Inc.
Mostardi Platt
Network & Security Technologies
Nicor Gas
Ohio Semitronics Inc.
PJM Interconnection, LLC
PME Of Ohio, Inc.
SD Myers, LLC
Sherman Mechanical
Siemens Energy, Inc.
Sound, Inc.
W.W. Grainger, Inc.
Weldstar Company

**17.**   **District of Delaware Bankruptcy Judges and Key Staff Members**

Al Lugano
Cacia Batts
Catherine Farrell
Chief Judge Laurie Selber Silverstein
Claire Brady
Demitra Yeager
Jill Walker
Joan Ranieri
Judge Ashely M. Chan
Judge Brendan L. Shannon
Judge Craig T. Goldblatt
Judge J. Kate Stickles

Judge John T. Dorsey
Judge Karen B. Owens
Judge Mary F. Walrath
Laura Haney
Laurie Capp
Lora Johnson
Marquietta Lopez
Nickita Barksdale
Rachel Bello
Robert Cavello
Una O'Boyle

**18.**   **Office of the United States Trustee**

Andrew R. Vara
Benjamin Hackman
Christine Green
Denis Cooke
Diane Giordano
Dianne P. Dugan
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Joanne E. Clausen

Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Lauren Attix
Linda Casey
Linda Richenderfer
Michael Panacio
Nyanquoi Jones
Ramona Harris
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

19.    **Other Parties**

| | |
|---|---|
| BTI Communications Group Ltd | GT Power Group LLC |
| F.E. Moran Inc. Fire Protection | Jeff Whitehead |
| Hill Fire Protection LLC | Westmont Engineering Company |
| Fusion Cloud Services LLC | King & Spalding LLP |

## **APPENDIX 2**

### **Client Match List**

30316049.4

**Client Match List**

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| ABN AMRO Capital, USA LLC | Current Lenders and Related Parties | Current Client |
| Allegheny Energy Supply Company LLP | Significant Vendors | Current Client |
| Allianz | Insurance Providers and Brokers | Current Client |
| Amazon Capital Services, Inc. | Top 30 Unsecured Creditors | Current Client |
| American International Group, Inc. | Insurance Providers and Brokers | Current Client |
| Aon PLC | Insurance Providers and Brokers | Current Client |
| AT&T Corporation | Utilities | Current Client |
| AT&T, Inc. | Utilities | Current Client |
| AXA XL | Insurance Providers and Brokers | Current Client |
| Carlyle Group Inc. | Significant Shareholders and Related Entities | Current Client |
| Carlyle Power CPP II Lincoln, L.L.C. | Significant Shareholders and Related Entities | Current Client |
| Carlyle Power Partners II-C, L.P. | Significant Shareholders and Related Entities | Current Client |
| China Merchants Bank Co., Ltd., New York Branch | Current Lenders and Related Parties | Current Client |
| Chromalox, Inc. | Top 30 Unsecured Creditors | Current Client |
| CIT Bank, N.A. | Current Lenders and Related Parties | Current Client |
| Cogentrix Energy Power Management, LLC | Current Affiliates | Current Client |
| Comcast Cable Communications Management LLC | Utilities | Current Client |

---

[1]   The term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter.  The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed.  L&W does not disclose connections if time was recorded more than three years before the Petition Date.

30316049.4

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Cook County Treasurer's Office | Taxing Authorities | Former Client |
| Deloitte & Touche LLP | Top 30 Unsecured Creditors | Current Client |
| Evoqua Water Technologies, LLC | Significant Vendors | Current Client |
| FTI Consulting | Professionals | Current Client |
| GE Capital EFS Financing, Inc. | Current Lenders and Related Parties | Current Client |
| Guggenheim Partners | Professionals | Current Client |
| Industrial and Commercial Bank of China Limited, New York Branch | Current Lenders and Related Parties | Current Client |
| Ingersoll Rand Co. | Top 30 Unsecured Creditors | Current Client |
| Investec Bank PLC | Current Lenders and Related Parties | Current Client |
| JP Morgan Chase Bank | Current & Prior Significant Banking Relationships | Current Client |
| Linde Gas & Equipment, Inc. | Top 30 Unsecured Creditors | Former Client |
| Macquarie Bank Limited | Customers, Licensors, and Other Key Contractual Counterparties | Current Client |
| Macquarie Energy LLC | Significant Vendors, Customers, Licensors, and Other Key Contractual Counterparties | Current Client |
| Migdal Sal (ForEx Credit UK) | Current Lenders and Related Parties | Current Client |
| Mitsubishi Power Americas, Inc. | Significant Vendors | Current Client |
| Munich Re America Corporation – The Princeton Excess & Surplus Lines Insurance Company (PESLIC) | Insurance Providers and Brokers | Current Client |
| National Australia Bank Limited | Current Lenders and Related Parties | Current Client |
| Omni Agent Solutions | Professionals | Current Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| RBS Pension Trustee Limited as trustee for the Royal Bank of Scotland Group Pension Fund (Main Fund Section) | Current Lenders and Related Parties | Current Client |
| Ring Central Inc. | Utilities | Current Client |
| RLI Corp. | Insurance Providers and Brokers | Former Client |
| Robert Mancini | Former Directors & Officers | Current Client |
| SCOR SE | Insurance Providers and Brokers | Current Client |
| Sequent Energy Management LLC | Significant Vendors | Former Client |
| Siemens Energy, Inc. | Significant Vendors, Top 30 Unsecured Creditors | Current Client |
| STWD 2021-SIF1, Ltd | Current Lenders and Related Parties | Current Client |
| SunTrust Bank | Current Lenders and Related Parties | Current Client |
| Swiss Reinsurance Company Ltd | Insurance Providers and Brokers | Current Client |
| Wells Fargo Bank, N.A. | Current & Prior Significant Banking Relationships | Current Client |
| W.W. Grainger, Inc. | Top 30 Unsecured Creditors | Current Client |